We will move to the last case for argument today, which is ElectroMedical Technologies Inc. v. Nielsen. If counsel on that case are ready to go. Let's see, who is counsel for the appellant? Is that Mr. Klott? Yes, your honor. Oh, and you are on the phone. Very good. Okay, so whenever you're ready to proceed, we're ready to hear from you. Thank you. I'm good morning, your honors. Matthew Klott on behalf of the appellant. There was some discussion earlier of how we're in the new normal here, but I don't think it changes my purpose in the appellate argument. And I've always understood that I'm here to clarify things that perhaps weren't as clear as they should have been in the briefing. And so when I get to the discussion of the actual merits of the appeal, I'm going to reverse the order of the two decisions and the discussion, because I think it's going to perhaps clarify anything that wasn't clear enough in the briefing. That's my fault. I fell short in the briefing. I'm happy that the panel gave me this opportunity to fix that. But out of the new normal, I do have one thing I ask, and it's something I've never done before. I'm going to ask that the panel follow a couple very small rules that I have for argument now. One, I can't serve my purpose here if you can't hear me. So if I need to speak up, just say, I can't hear you. You don't have to be nice about it. You don't have to ask permission, trying to watch on YouTube, but there's a slight delay. So I can't even read the second issue is if you have any questions, you don't have to wait for a pause. I tried to pause I might fail at that. Jump in interrupt me don't have to be nice about it. I'll take you up on that invitation right now. So we have two decisions before us. And I need some help from you just in understanding the relationship between the two. The one is the denial of the I-129 and the other is the denial of the I-485. Is that right? Correct, your honor. Okay. And am I right in assuming that if we ruled against you on the I-129 issue that you necessarily then lose on the I-485 issue? I think I've been struggling with this and I'm not an immigration lawyer and you know, the court recently issued Peters v. Barr and noted that, you know, immigration is far more complex than the average lay person can handle. And maybe I'm below average, but I feel like this is more complex than the average lawyer can probably handle. But there are two grounds for having denied the I-485. And if one of them, but focus on Judge Watford's question because it's the exact question I have. Let's assume and let's talk, let's call it the visa, the H-1B. Let's assume that the decision to deny that was appropriate. That it was correct. Doesn't that dispose of the, doesn't that dispose of the second issue? I suppose it's how the court interprets the parenthetical in 1255 C-2. Well, but it was also based, I want to get to those merits for a second, but it was also based on seven and eight, which doesn't have that parenthetical. So when you get to that, I want you to address that, but I have a really a threshold question. And so let me, let me lay it out for you. The agency assumed that the, the applicant or the, the alien in this case, you should hear the applicant, was entitled to credit for the time that he was represented by incompetent counsel. But said, in effect, two years after that counsel left the case and during a period of time when the applicant was represented by competent counsel, nobody moved to extend the H-1 visa. And under the circumstance, that is not delay that we think was justified. I'm rephrasing a little, but I think that's a fair statement of it. And we don't get the H-1B visa. Now when we get to the application for adjustment of status, you've been out of status and you're working at a job without a visa. So it seems to me if the first one is correct, we don't get to the second one because they've already found that the, that the delay after the incompetent counsel left was not justified under the circumstances. So if you could address that first issue for me, it would be very helpful. I don't believe the denial on the visa was correct or justified. And I don't really understand. I understand that they said, we think you should have done something sooner because you had competent counsel eventually. But the problem we have here is that decision doesn't really explain anything. It just tells you we, we think you waited too long. You should have acted sooner. The challenge I have, well, it says you've been out of status for what, seven, eight years, some, some long period of time. We're not going to, we're not going to excuse you for being represented by incompetent counsel because we understand that wasn't your fault. But you've been out of status for two years since you began to be represented by competent counsel. And as to that, we, we're not going to excuse you. I think that's what they said. They don't say it, you know, in those precise terms. Tell me why that was an abuse of discretion because this is an APA review. Yes. Well, one, they don't really explain what the basis is with respect to the denial of the I-129. They identify some periods of time and they say, you should have known, but you didn't do anything sooner. But again, that all sort of begs the question because they acknowledge counsel was involved. So up to 2000, up to 2012, well, the periods of time that are identified in the denial on the I-129 is either September 29th, 2012 to 2013 until it was filed or November 2014. Okay. But is there any, is there any challenge? There's no claim in this case that once new counsel took over, they were incompetent or that the applicant, if I can call him that, although he's not really the applicant on both things here, that the applicant relied on faulty advice in not seeking to renew his H-1B. So we've got a period of time where nothing is done and no excuse is offered for it. And that's what's concerning me in this case. Can you, I want you to address that period of time and tell me why we should count that time as, even if it's relevant, as falling under the no fault of your own rubric in C-2. Okay. Thank you, Your Honor. Now I think I understand where you're getting at. I apologize. And there's, and I, maybe perhaps part of the disconnect here is there are multiple new counsel. There's the original new counsel who caused the problem in 08. Then there's a change in counsel and that gets us up to that September 2013 time period. Well, I don't think there can be any doubt my client is relying on the counsel to fix all of my clients, the employer and the employee and the employee's family. They're all relying on that lawyer. We don't really know why the lawyer did what they did, but they were represented. They were actively litigating some, the I-140 issue. When that comes to a conclusion, my clients do, the only thing they can reasonably do, they go find somebody. And now they get to the third lawyer involved and that lawyer files things when they file them. With respect to that lawyer, I guess first, you know, we as lawyers try to move as quickly as we can. Sometimes that's difficult and here that becomes problematic because of what needs to be found to justify such a late filing. But from my client's perspective, and I think this is the issue, it's discussed in Peters v. Barr and now we're discussing it here in the context of the I-129, but the language and the idea I think is the same because as noted in that decision, it's sprinkled throughout immigration law whether it's statute or reg. Clients can rely on the lawyer because this is confusing. It's difficult. And so from my client's perspective, I hire a lawyer. From all I can tell, they appear to be competent. They're doing what they can do. The problem we have on the I-129 end of things, as noted by the government, we don't really have the record at all. And I don't really understand why. But isn't it your burden to make that record when seeking to file this late application? In other words, for the first period, the original bad lawyer, if you will, we have your client saying, I relied on his advice that I didn't need to do anything. And the agency says, good, we'll credit that. But what do we – your argument seems to be that as long as you're represented by counsel, you don't need to comply with time deadlines because you must have been relying on counsel to comply with it. Is that your argument? Well, you know, you never like to be put in a box. But I guess at some fundamental level, almost, yes. And I think it goes to the reasonableness, perhaps. If there's something to suggest that my – that the lawyer had told my client something differently or my client was directing how it works, but it – you know, clients rely on us. And of course we make mistakes. And that's why some of these things are here. I don't know what my client – what my client got that would have put them on notice that something different should have happened other than they kept losing. But I don't know that that's enough because it sounds like that's not an unusual outcome for an applicant. So my client submitted in the record on the I-485 the letter from the attorney, the original, the first attorney, I – I don't – you know, I don't know if they couldn't obtain the same sort of statement, mea culpa, from the second attorney who handled the district court litigation up to 2013. After that time period when the third lawyer is brought in, I don't know what other evidence to put into the record that wouldn't almost be evident on its face that I – I understand that my client is the applicant, has the burden, I understand its abuse of discretion, but that isn't, you know, a complete defense for the government to at least look at what's there. And they're the agency with expertise. If there's something that seems a little strange, something that's missing, whatever it is, I don't know that it's unreasonable to expect them to ask. And I don't think it's unreasonable for a client to rely on their lawyer. Now if your lawyer tells you to go kill that person, you're like, okay, obviously that's not – that's not going to be reasonable, but we're in a very complicated area of administrative law. There's overlapping timelines and overlapping application processes. What else can my client do? I mean, if my client came here the way we expect, lawfully, following the rules, no problem with that. My client has lawyers involved throughout. I think that's what kind of is expected. It seems to be the way that the courts think you have to do it because it's so complicated. I have trouble if the client relies on the lawyer and the lawyer just makes a mistake. I don't even know if it's below the standard of care on some of these things here. It's just a – it's a mistake. I think the Second Circuit has suggested that this is so difficult that, you know, I don't know if it would be below the standard of care. So to the extent that some subsequent lawyer didn't put enough evidence in the record that they made a mistake, I don't know how that falls on my client. I don't know what else my client could have done there. Do I answer your question at all? No, you have. You've answered my question. All right. I'm sorry. I'm sorry. Thank you. You have answered it. Okay. Want to save the remainder of your time for rebuttal? It's up to you. Yeah, the one thing I would just note is that, regardless, throughout this process, if there's one thing that's clear in this record, my client has moved – has done what my client can do, which is diligently find some lawyer. It's not like they're sitting back doing nothing for long periods of time. And from that, I don't know what else we would expect. If I've gone over my time, I don't need to save anything else. I think I've – but I'm happy to answer more questions and help the court. Okay. It doesn't look like we have any more questions for you at this moment, but you do have a little time for rebuttal. So why don't we hear from the government, and then we'll hear from you again. Thank you. Okay. Ms. Morrison, is it? You're – yep, you got it. Can you hear me now? If you could keep your voice up, yes. We can just barely hear you. Good morning. If I can have a minute to lay out my document. Thank you. Of course. Okay. So good morning, and may it please the court. Christina Morrison, appearing on behalf of the government. To start with the question that I believe Judge Hurwitz was exploring, the answer as to the I-485 question is yes, if the court rules in favor of the government with respect to the I-129 or the H-1B extension of stay request, the I-485 issue is disposed of as well. And that's because – is that because you view the petitioner – just let's focus on the individual. Is it Mr. – how do you say his last name? I pronounce it Gajik. I hope I'm pronouncing it correctly. Gajik, okay. Is the reason for your answer there because Mr. Gajik has not made the argument that we sort of found in the petitioner's favor in Peters? It's – the position is that the discretionary decision for the – yes to your question as to Peters, and also that the discretion falls under 8 U.S.C. 1255A. Let's put that aside for a second because I know that's the position you've taken. But let's assume that we thought that – is it USCIS? Yes, who adjudicates the I-485s. Let's assume that we did not accept your argument that we lack jurisdiction altogether, that instead they really did rule on the basis of eligibility as opposed to some kind of discretionary denial. It seems to me that this gentleman and I guess his family is in very much the same situation as Ms. Peters was, and I guess what I'm wondering is, is the problem here in terms of why he can't take advantage of that same parenthetical that we were dealing with in Peters is because he just hasn't made that particular argument as a basis for justifying his more than 180 days of being out of status? Yes, and there are key distinctions between the Peters decision and this particular case. In Peters, the plaintiff – well, two points. First of all, the court held that the agency had improperly ignored or failed to consider ineffective assistance of counsel as a basis, and in this case, the agency absolutely did. Secondly, Ms. Peters was kept in the dark by her attorney, and it was the full extent of his representation that was at issue, not anything beyond. So she was under the impression because of his representations that the extension request had been filed. In this case, the parties, the company as well as Mr. Gaggi, did know that there were problems. They did rely on the ineffective counsel of Attorney Solomon, but they didn't do anything after for such a long gap. How long was that gap? It seems to me it's two years, but I'm not sure. It's actually depending on where we look. Mr. Solomon left the scene in April of 2012, and the extension of stay request that is at issue here was filed in July 2015. So that's more than three years, but in its decision, the agency pointed to the filing of the second H-1B extension request, which was the first time after Solomon left the scene. So between two and a half and three, more than three years. So Judge Watford was about to ask a question, and I zoomed in on him. No, no, no. That's fine. So let me follow up on that. So I understand that I've reviewed this record that Mr. Gaggi doesn't say, well, I relied on counsel to seek an extension after initial incompetent counsel left the scene. But is that a necessary implication of his argument here? USCIS doesn't really say, just says, look, it was three years or two years after the And that's not to lay commensurate with the circumstances. And as a temporal matter, I agree. But is there an implied argument that you should have addressed that we need to find out what subsequent counsel told you? They were busy litigating the I-140. And they were busy very aggressively litigating and making sophisticated arguments in the I-140. And no, it's not the agency's burden to hypothesize on other legal bases that the plaintiff might put forward. In an APA review case, the agency has the record that the petitioners provide to it. And there's no indication that there was ineffective assistance of counsel. In fact, in plaintiff's opening brief here, they dropped a footnote, footnote 15, that the Andre Banach law firm was nationally acclaimed and highly respected with great experience in immigration law. And they were making significant, very sophisticated legal arguments challenging the I-140. And it is petitioner's burden to demonstrate ineligibility. And they offered nothing, not one document, not one reason to explain that gap. Is there any reason to think that if a timely application to extend the H-1B visa had been made, it wouldn't have been granted? Is there something in this record that suggests that it wasn't a slam dunk of success? For the H-1B, the first extension request? Yes. I think if they had indicated that he missed that filing deadline, because particularly while the I-140 was still pending, then the only issue, the only impediment would have been the late filing of the H-1B petition. At this point, because the I-140 was litigated to completion and plaintiffs with counsel did not appeal that, that's not a decision that can be overturned or fixed. And when we look at it within the context of there being a six-year limit under which someone can have an H-1B visa, that makes it a very difficult obstacle that the plaintiffs simply weren't able to overcome. And ultimately, even though they're phrasing it with respect to the denial of the third H-1B petition, it appears they're trying to fix what happened back in 2013. And that is what the agency was pointing to, that that litigation really was the turning point and it became the point of no return for them because they did not act. Once you are not only out of status, but now you don't even have anything that can bridge the gap for you to adjust your status, that's a dire situation. They needed to act and they didn't address that at all. If I could circle back to the Peters example, even while she was represented by, let's say, assumingly ineffective assistance of counsel, she was diligent in reaching out. She was able to show she reached out to her congressperson, the company did the same, trying to find out why the agency hadn't ruled on the H-1B petition. And even though here the plaintiffs took the strategy of challenging the I-140, and there's a good reason for that, they did nothing to address the H-1B status for that significant gap until the first filing after Solomon left was in 2014. Well, that's true. All of what you said, I grant you, is true. But I guess I view Mr. Ghazi as being essentially as sympathetic a petitioner as Ms. Peters because every single minute that he has been out of status is attributable to bad advice he got from a lawyer along the way. Now, unlike in Peters, it wasn't just one lawyer. It was, I don't know, three, four lawyers that Mr. Ghazi was relying upon. But at every turn, he didn't take the steps necessary to keep himself in status solely in reliance upon bad legal advice. I would respectfully disagree with that characterization. He absolutely relied on bad legal advice up until April 2012. But the actions and the record of what subsequent counsel who were immigration law attorneys did does not mean on its face, just because they lost the I-140 litigation and they lost the H-1B extension of state, that they provided ineffective assistance of counsel. Attorneys make legal arguments, it hurts my soul to say, all the time that we don't prevail on. Surely if someone said to him, don't apply for an extension of your H-1B visa, it's okay. We'll take care of it with the I-140. Would that have been appropriate legal advice? That is bad advice. That's what Attorney Solomon did. To be fair to you, he doesn't allege that. He doesn't say anybody told me that or advised me not to. Correct. After Solomon, there's nothing in the record. The record is devoid, and this is an APA review case, of anything that suggests or explains that it was the actions of the attorneys that they provided bad advice to them. The reason I ask this is I wanted you to get to something we didn't get to cover with your friend. Let's assume that he was out of status through no fault of his own. We still have the question of whether or not the adjustment of status should be allowed. I want to ask you what your view is with respect to the no fault of your own defense, with respect to the denial of adjustment of status. My view is that it's not simply being able to show ineffective assistance of counsel to warrant the relief. You have to show reasonable reliance, as the court stated in Peters, as well as- No, no, I'm asking a different question. Okay. C-7 and C-8 say you can't get your status adjusted if you're working at a job, et cetera. C-2 has some other prohibitions in it. C-2 has one point where it says do no fault of your own, but C-7 and C-8 don't say that. So let's assume that through no fault of his own, he had failed to extend the H-1B visa. Would that be a defense to the violations of C-7 and C-8, if you will? It would not, because those provisions are specific, and they don't include that caveat. And the agency does, in this case, expressly stated it had discretion. It had the discretion, as plaintiffs argued in their I-485 brief to the agency, to provide the humanitarian relief, but due to the delay, the significant delay, it declined to exercise its discretion favorably towards the plaintiffs in this case. So the I-485- See, the way I read it, and this goes back to what Judge Watford asked, the way I read what the agency did with respect to the adjustment of status application, because I always get numbers mixed up, is it said, you're not eligible for adjustment of status because, among other things, you've been working in a job with no visa, etc. And those are the C-7 and C-8 violations. My question is, even if that was not through any fault of his own, as a matter of law, would C-7 and C-8 still apply? Put aside whatever discretion you wanted to exercise. They would still apply. It's not an or, either or. So your position is that there is no defense to C-7 or C-8, simply because it's not your fault that you've been working without permission. Correct, and I would add that in addition to that ineligibility, there was further discretionary decision where it declined to rule in their favor, and that is what's not reviewable by this court. So ultimately, we believe that there was sufficient and ample reasoned basis provided by the agency. It's an unfortunate situation. However, what's being reviewed here is whether or not the agency made a mistake, and the agency did not make a mistake. And accordingly, unless the panel has additional questions, we would ask that the court affirm the decision. Okay. Thank you, counsel. We will hear from counsel for the comments and rebuttal. Mr. Klopp, go ahead. Thank you, Your Honor. Quickly, to judge Hurwitz's questions in point, C-7 and C-8 do not contain the parenthetical language. However, you get to the same place because the same concept exists with respect to the I-129 and, you know, the 8 CFR 214.1C. Same concept is there. So not in the statute, but you get there the other way. And to the extent that any of the reasons for finding ineligibility dealt with working without authorization, it falls on that I-129 issue. I do want to note what the government has noted here, which is that my clients aggressively pursued this. I think the record is clear to the extent particular lawyers are not identified and specifically with respect to the I-140 litigation. I don't understand why there isn't some sort of judicial agency notice. I mean, it's a lawsuit. How do they not know about it? They're involved in it. So I understand it's my burden to put things in the record, but, you know, you are involved, so I'm not sure you get a complete free pass on that. Well, you could have put in the record, for example, not you, but someone could have put in the record something from the applicant, if I can call him that, so I don't mispronounce his name, that I thought the H-1B visa issue was being taken care of by subsequent counsel. We don't even have that. Well, certainly would welcome the opportunity, because I think it goes to the earlier question, I think that's sort of implied. And I know that there's been discussion about ineffective assistance of counsel, and I know that's a shorthand way of saying it, but my understanding is the question is more of did you reasonably rely on your counsel? And as the government conceded, the second lawyer involved here, who handled the litigation on the I-140, is my understanding is nationally respected immigration counsel. How much more reasonable could their reliance be? We went and found nationally respected counsel. I don't know what it cost, but I am certain it was not inexpensive. I don't know what else we can ask. And then after that ends, they immediately go find the final lawyers that submitted the petitions that are ultimately give rise to the decisions being reviewed today. From the applicant perspective, I don't know much more we can impose on them. And that's really the question, because they're the ones who suffer here. I don't know how this gets fixed. I'm not that smart. But the one thing I would ask, and then unless there are other questions, I'll just close with this, is at the very least, the child here is about to start his senior year in high school. If the panel is inclined to affirm what has happened, I would at least ask that that happen quickly. Don't typically ask the court to move any faster than the court likes to move. Not for me to tell the court to do. So at the very least, I would ask that that be done here. Thank you. Mr. Klopp, that's a perfect place to end. Just one last question. Are your clients, are the individual clients, are they in removal proceedings now? No, they're not. Okay. All right. Very good. Thank you both for your arguments. The case just argued is submitted, and that concludes this session of the court. We are adjourned. Thank you. All rise. This court for this session stands adjourned.
judges: Watford, Hurwitz, Battaglia